UNITED STATES of America,
Plaintiff-Appellee,

v.

Mario BURKHALTER,
Defendant-Appellant.

No. 78–1031.

United States Court of Appeals,
Eighth Circuit.

Submitted April 10, 1978.

Filed Sept. 7, 1978.

David E. Essling, St. Paul, Minn., argued and on brief, for defendant-appellant.

John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., argued, for plaintiff-appellee; Andrew W. Danielson, U. S. Atty., and Mel I. Dickstein, Asst. U. S. Atty., Minneapolis, Minn., on brief.

Before BRIGHT and ROSS, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

Defendant-appellant Mario Burkhalter appeals from his conviction, after a bench trial on stipulated facts, for violating the National Firearms Act, specifically, 26 U.S.C. §§ 5811, 5861, by aiding and abetting the transfer of two sawed-off shotguns without payment of the required transfer tax.

The transfer took place on February 22, 1977, in Minneapolis, Minnesota. Defendant arranged the sale of two sawed-off shotguns to two federal undercover agents, which took place at the residence of one Michael Bell. Bell was paid $110 for the guns by the agents, and Burkhalter was paid $40 by them for acting as a go-between.[1] Defendant's role was limited to that of a "finder" or broker; he was never in actual possession of the shotguns. The required transfer tax was not paid, hence the transfer was in violation of the law.

Burkhalter was arrested on February 25, 1977 by federal and state agents on a state charge of receiving and concealing stolen property. On March 16, 1977, he pled guilty to that charge and was sent to a Minnesota reformatory. On August 5, 1977, Bell and defendant were indicted by a federal grand jury on two counts of violating the National Firearms Act, one count for each shotgun transferred. Defendant was transferred to federal custody on September 20, 1977, and he was arraigned before a federal magistrate the same day. On November 7, 1977, defendant waived his right to a jury trial and the parties submitted the case to the District Court on stipulated facts. The defendant was found guilty on November 17, 1977 of aiding and abetting a violation of the Firearms Act and was subsequently sentenced to three years probation. We affirm that decision.

Defendant's first argument is that it is impossible for anyone to be guilty of aiding and abetting a violation of 26 U.S.C. §§ 5811, 5861.[2] He contends that since it imposes the duty to pay the transfer tax solely on the *transferor*, Congress intended not to hold other involved parties, such as an arranger of the transfer, liable. The cases that are relied upon in support of this argument, however, hold only that persons within the class sought to be protected by a criminal statute may not be prosecuted as co-conspirators.[3] Burkhalter was in no

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The facts are further detailed in *United States v. Bell*, 573 F.2d 1040 (8th Cir. 1978), a case arising out of this same transaction.

2. 26 U.S.C. § 5811 provides in pertinent part that

(a) Rate.—There shall be levied, collected, and paid on firearms transferred a tax at the rate of $200 for each firearm transferred

. . . . .

(b) The tax imposed by subsection (a) of this section shall be paid by the transferor.

26 U.S.C. § 5861 provides in pertinent part that

It shall be unlawful for any person

. . . . .

(e) to transfer a firearm in violation of the provisions of this chapter . . . . .

3. *See, e. g., Gebardi v. United States*, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932) (Mann Act prosecution of the woman transported); *United States v. Nasser*, 476 F.2d 1111 (7th Cir. 1973) (prosecution of client of unethical attorney); *Nigro v. United States*, 117 F.2d 624 (8th Cir. 1941) (prosecution of purchaser of narcotics).

manner within a special class of persons sought to be protected by the National Firearms Act so reliance on these cases was misplaced.

In fact, the Courts of Appeals have used 18 U.S.C. § 2[4] to apply aiding and abetting liability to violations of the Firearms Act in a number of cases. Guilty verdicts have been upheld for aiding and abetting the receipt of a firearm by a convicted felon, *United States v. Falletta*, 523 F.2d 1198 (5th Cir. 1975), for aiding and abetting the illegal transfer of a machine gun, *United States v. Virciglio*, 441 F.2d 1295 (5th Cir. 1971), and for aiding and abetting the possession of a weapon on which the required tax had not been paid, *United States v. Holt*, 427 F.2d 1114 (8th Cir. 1970). Most recently we held aiding and abetting liability applicable to violations of this particular transfer statute, § 5861(e), in *United States v. Bell*, 573 F.2d 1040 (8th Cir. 1978). The fact that the statute refers only to the transferor does not mean there can be no liability for anyone aiding and abetting the transferor. To hold otherwise would make the aiding and abetting statute inapplicable to any substantive offense wherein aiding and abetting language is not specifically mentioned.

■ Defendant's second argument is that even if one may be punished for aiding and abetting the transfer of a firearm without payment of the tax, he cannot be guilty of aiding and abetting the violation since he lacked any intent to violate the law. Although specific intent is one of the elements of most criminal violations, it is not a necessary element of a substantive violation of the Firearms Act. In *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), the Supreme Court, in rejecting a specific intent requirement in a case dealing with hand grenades, held that "the only knowledge required to be proved was knowledge that the instrument possessed was a firearm." *Id.* at 607, 91 S.Ct. at 1117. The Court went on to say that

"one would hardly be surprised to learn that possession of hand grenades is not an innocent act." *Id.* at 609, 91 S.Ct. at 1118.

Moreover, courts have held that specific intent is not required for a violation of § 5861(e), the provision we are concerned with here. *United States v. Thomas*, 531 F.2d 419 (9th Cir.), *cert. denied*, 425 U.S. 996, 96 S.Ct. 2210, 48 L.Ed.2d 821 (1976); *United States v. DeBartolo*, 482 F.2d 312 (1st Cir. 1973).

> The Government need not prove that a defendant knows he is dealing with a drug or a weapon possessing every last characteristic which subjects it to regulation. It is enough to prove he knows that he is dealing with a dangerous device of such type as would alert one to the likelihood of regulation. If he has such knowledge, and if the particular item is in fact regulated, he acts at his peril. A shotgun in today's society plainly falls within this category. One knowingly participating in the sale of such a lethal instrumentality cannot escape liability by failing to inspect the length of its barrel any more than by failing to inquire into whether it is registered.

482 F.2d at 316.

■ The argument of appellant is essentially that an aiding and abetting conviction requires a showing of specific intent to aid and abet the commission of a crime, even where such a showing is admittedly not necessary to convict a principal of the substantive crime. This argument was recently rejected by this circuit in *United States v. Bell*, 573 F.2d 1040 at 1046 (8th Cir. 1978), stating that "[i]t would be anomalous to hold that specific intent was a necessary element of aiding and abetting a crime, but not of the crime itself." Since the aiding and abetting statute makes an aider and abettor punishable as a principal, a showing of specific intent should be required of an aider and abettor only if spe-

---

**4.** 18 U.S.C. § 2 provides in pertinent part that

  (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

cific intent is also a necessary element for liability as a principal.[5]

The District Court made the following findings concerning defendant's knowledge and conduct.

> Here defendant admits knowing the devices being transferred were sawed-off shotguns and there is nothing to suggest he did not know they were dangerous weapons. Thus, as defendant went about contacting undercover agents he believed to be fences, arranging the sale to them of sawed-off shotguns, and accepting money for the consummation of the sale, he, at the very least, was alerted to the possibility his activities were illegal. Being so alerted, his actual participation in the transfer was sufficient to expose him to criminal liability.

United States v. Burkhalter, No. Cr. 4–77–108, at 2–3 (D.Minn. Nov. 17, 1977). We agree with these findings. The defendant knew that he was aiding and abetting the transfer of sawed-off shotguns. Although he may not have known for a fact that the transfer was illegal, he was certainly alerted to that possibility. Therefore, his knowing participation in the transfer is enough to subject him to criminal liability.

■ Burkhalter's final argument is that he was denied his right to a speedy trial. The constitutional right to a speedy trial is not involved, however, since the delay complained of is the delay between his arrest on a *state* charge and his later *federal* indictment on a different charge. In *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), the Court held that the Speedy Trial Clause of the 6th Amendment did not apply to preindictment delay,[6] which was controlled primarily by statutes of limitations and secondarily by the Due Process Clause of the 5th Amendment.

■ A lengthy preindictment delay may violate the Due Process Clause under some, but not all, circumstances.

> [W]e need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution. Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution.

United States v. Marion, 404 U.S. 307, 324–25, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971) (footnotes omitted) (quoted in *United States v. Lovasco*, 431 U.S. at 789–90, 97 S.Ct. 2044). The defendant has not alleged any actual prejudice in his defense of the federal charges and the fact that his trial was based on stipulated facts makes it difficult to imagine any actual prejudice to his defense. The effect upon the defendant's rehabilitation program under a different state criminal conviction, if any, does not amount to the actual prejudice to his defense that is a minimum requirement for a due process violation.

The five month lapse of time is certainly not enough by itself to violate the defendant's rights. In fact, this circuit has previously upheld a preindictment delay of two years. *United States v. Buttorff*, 572 F.2d 619 (8th Cir. 1978).

> This court recognizes that "an unreasonable pre-accusation delay, coupled with prejudice to the defendant, may violate the Fifth Amendment . . . ." However, [defendant] has not alleged any specific prejudice created by the delay. Although we do not condone the government's actions, we find no constitutional error in the prolonged delay.

Id. at 625, quoting *United States v. Jackson*, 504 F.2d 337, 339 (8th Cir. 1974), *cert. de-*

---

**5.** *Cf. United States v. Prince*, 529 F.2d 1108 (6th Cir.), *cert. denied*, 429 U.S. 838, 97 S.Ct. 108, 50 L.Ed.2d 105 (1976) (specific intent required for aider and abettor where it was required for the principal).

**6.** Furthermore, 18 U.S.C. § 3161(j), which states that when "the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution" it shall take prompt action to bring the defendant to trial, applies, by its own terms, only to a person already indicted for the offense.

*nied*, 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975).

Based on the record before us, we find that the defendant was properly convicted of aiding and abetting a transfer of a sawed-off shotgun in violation of the National Firearms Act. Furthermore, we find that the government's actions in bringing this case to trial did not violate any of defendant's constitutional rights. Accordingly, we affirm the District Court's decision.