**UNITED STATES of America, Appellee,**

v.

**James Harold HOOD, Appellant.**

**No. 78–1152.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1978.

Decided Feb. 8, 1979.

Steven A. Storslee, Fleck, Mather, Strutz & Mayer, Bismarck, N. D., for appellant.

Lynn E. Crooks, Asst. U. S. Atty., Fargo, N. D., for appellee; James R. Britton, U. S. Atty., Fargo, N. D., on brief.

Before GIBSON, Chief Judge, and LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

James Harold Hood appeals from his conviction of interstate transportation of stolen goods with a value in excess of $5,000, knowing the same to have been stolen, in violation of 18 U.S.C. § 2314. We affirm.

## I.

Hood first contends that he was denied his Sixth Amendment right to a speedy trial by the government's unreasonable delay in filing charges against him. He contends that although the Federal Bureau of Investigation was aware of the facts alleged in the indictment by October, 1975, twenty months elapsed between that time and the time that the indictment on which he was tried was returned.[1]

In *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752

---

1. On March 9, 1977, an indictment was returned against Hood for the interstate transportation of stolen property in violation of 18 U.S.C. § 2314. Because of a defect in that indictment, it was dismissed on the government's motion on March 29, 1977. A new indictment was returned on May 25, 1977, charging Hood with the same offense. It was on this indictment that Hood was eventually tried.

(1977), the Supreme Court held that the speedy trial clause of the Sixth Amendment is inapplicable to preindictment delay. *See United States v. Burkhalter*, 583 F.2d 389, 392 (8th Cir. 1978). Unreasonable preaccusation delay, coupled with prejudice to the defendant, may, however, violate the due process clause of the Fifth Amendment. *See United States v. Marion*, 404 U.S. 307, 324–325 (1971); *United States v. Burkhalter, supra* at 392; *United States v. Buttorff*, 572 F.2d 619, 625 (8th Cir.), *cert. denied*, 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978). In each case, the reasonableness of the delay must be balanced against any resultant prejudice to the defendant. *United States v. Weaver*, 565 F.2d 129, 131 (8th Cir. 1977), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1263, 55 L.Ed.2d 780 (1978); *United States v. Jackson*, 504 F.2d 337, 339 (8th Cir. 1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975).

■ We find no unreasonable preindictment delay here. The investigation of this case was not concluded until March, 1977, when Hood's accomplice appeared before a federal grand jury and testified pursuant to a grant of immunity. The indictment on which Hood was tried was returned on May 25, 1977, some two months later. Periods of active investigation by the government may not ordinarily be considered in support of a claim of unreasonable preindictment delay. *See United States v. Robertson; United States v. Little*, 588 F.2d 575 at 577 (8th Cir. 1978). Moreover, although Hood's trial counsel alluded to the unavailability of two witnesses as a result of the government's delay, neither the identity of these witnesses, nor the content of their expected testimony, was given. Since Hood has alleged no specific incident of prejudice resulting from the government's delay, his claim is without merit. *See United States v. Robertson; United States v. Little, supra* at 577.

## II.

Hood next contends that he was denied a fair trial by the trial court's refusal to poll the members of the jury about their possible exposure to an allegedly prejudicial newspaper article which was published in the local newspaper during the trial.

During Hood's trial, an article recounting the events of the trial appeared in the Fargo Forum, a local newspaper which has wide circulation in the Southeastern Division of the District of North Dakota where the trial was held. This article stated that through the testimony of Hood and his wife, defense counsel had demonstrated that although Hood had faced various criminal charges in other matters, all of those charges had been dismissed. In addition to listing charges which had been brought out at trial, the article also listed a charge of armed robbery in California, which had not been the subject of any trial testimony.

■ Whenever it appears during the course of a trial that the members of the jury may have been exposed to publicity which is adverse to the defendant, the trial judge must make an initial determination as to whether the publicity creates a danger of substantial prejudice to the accused. *See United States v. Jones*, 542 F.2d 186, 194–195 (4th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976); *United States v. Pomponio*, 517 F.2d 460, 463 (4th Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). If the trial judge determines that it does, the jurors should then be polled individually to determine whether they have in fact been exposed to the prejudicial information. If any jurors have been so exposed, the trial judge must ascertain the extent and effect of the infection, and what measures, including the possible declaration of a mistrial, must be taken to protect the rights of the accused. *See Marshall v. United States*, 360 U.S. 310, 312, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); *Mastrian v. McManus*, 554 F.2d 813, 819 n.5 (8th Cir.), *cert. denied*, 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977); *United States v. Word*, 519 F.2d 612, 615 n.5 (8th Cir.), *cert. denied*, 423 U.S. 934, 96 S.Ct. 29, 46 L.Ed.2d 265 (1975); *United States v. Jones, supra* at 194; *United States v. Armocida*, 515 F.2d 29, 49 (3d Cir.), *cert. denied*,

423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975).

██ In this case, the trial court denied Hood's request for a poll of the members of the jury because, in its view, the information which was publicized failed to meet the threshold requirement of creating a danger of substantial prejudice to the accused. Prior to the publication of this information about Hood's arrest for an additional offense, Hood and his wife had already testified extensively about his prior arrests for three counts of murder in Arkansas, and for armed robbery and kidnapping in Arizona. Hood's defense was based upon the contention that he was being harassed by law enforcement authorities by the continual bringing of charges, and their eventual dismissal. While we believe that better practice would require the polling of the jury, we cannot say, under the particular circumstances here, that the court's failure to do so constituted an abuse of discretion. *See United States v. Jones, supra* at 194–195; *United States v. Armocida, supra* at 49; *United States v. Anderson,* 165 U.S.App. D.C. 390, 402, 509 F.2d 312, 324 (1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975).

### III.

Hood next contends that he was denied his right to due process of law under the Fifth Amendment when the government was permitted to cross-examine him regarding his refusal to give a statement about his involvement in the crime to law enforcement authorities.

██ A suspect's refusal to give a statement does not generally constitute admissible evidence. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Two Bulls,* 577 F.2d 63, 66 (8th Cir.

1978). Such evidence is, however, admissible in certain atypical situations. *United States v. Two Bulls, supra* at 66. Since Hood testified on direct examination that he had offered to talk to the Federal Bureau of Investigation, he could be properly cross-examined as to his refusal to make any such statement to law enforcement authorities. Under these circumstances, Hood's prior silence was used solely to contradict his prior testimony. *See Doyle v. Ohio, supra,* 426 U.S. at 619 n.11, 96 S.Ct. 2240.

### IV.

Hood next contends that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment. Specifically, Hood cites the failure of his trial counsel to make any motions for acquittal or for a new trial; his failure to move for a mistrial when certain allegedly prejudicial evidence was received; his unpreparedness for the examination of witnesses; and his general failure to perform with sufficient skill and diligence.

██ In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby. *Benson v. United States,* 552 F.2d 223, 224 (8th Cir.), *cert. denied,* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977); *Pinnell v. Cauthron,* 540 F.2d 938 (8th Cir. 1976). Our review of the record convinces us that Hood's trial counsel was prepared and that he generally performed with considerable skill and diligence. His failures to move for a mistrial do not support Hood's claim of ineffective assistance of counsel since we find no reason to believe that such motions would have been sustained had they been made.[2] His

---

2. Hood cites two incidents in support of his contention that a mistrial should have been declared. First, he cites an incident when a government witness volunteered that he had seen "mug shots" of Hood, thus bringing Hood's prior criminal record before the jury. However, Hood's counsel objected to this char-

acterization of the photographs, and the trial court sustained the objection. The court also admonished the jury to disregard the witness's comment.

In the second incident, counsel for the government asked Hood, on cross-examination, whether anyone else had ever been convicted

failure to move for a judgment of acquittal or for a new trial also do not support Hood's contention since we find that the evidence was clearly sufficient to sustain the conviction. *See* Part VI, *infra.*

## V.

Hood next contends that he was denied his Fifth and Sixth Amendment rights by a communication from the trial court to the jury during the jury's deliberations. During its deliberations, the jury sent a note to the trial court which asked when the trial testimony would be available to them. The court responded by sending a note to the jury which stated, "It is not possible to have the testimony transcribed for the jury's use. Because of the time and expense involved, transcripts are prepared only when a case is appealed." Hood contends that since it is common knowledge among laymen that the majority of criminal appeals are by the defense after a guilty verdict, the court's reference to an appeal would have been interpreted by the jury to mean that the court believed that a guilty verdict was probable. The court's note was apparently sent without prior notice to Hood or his counsel.

■■■■ It is clear that the trial court should have notified and consulted with the defense prior to responding to the jury's inquiry. *See United States v. Brunk*, 587 F.2d 910 at 912 (8th Cir. 1978). The law governing such communications was stated by this Court in *United States v. Treatman*, 524 F.2d 320, 323 (8th Cir. 1975):

> It is settled law that communications between judge and jury in the absence of

and without notice to defendant and his counsel are improper. *Jackson v. Hutto*, 508 F.2d 890, 891 (8th Cir. 1975). The appellant's right to be present is constitutionally guaranteed by both the Fifth and Sixth Amendments to the federal constitution. *Id.* However, although such communications create a presumption of prejudice, *Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *Jackson v. Hutto, supra* 508 F.2d at 892, such presumptions "may be overcome by evidence giving a clear indication of lack of prejudice." *Rice v. United States*, 356 F.2d 709, 717 (8th Cir. 1966) (footnote omitted). *See McClain v. Swenson*, 435 F.2d 327, 331 (8th Cir. 1970) (presumption overcome).

■■■■ Although such a communication is presumptively prejudicial, it may be shown, in the circumstances of a particular case, to constitute harmless error. *United States v. Brunk, supra* at 913; *Jackson v. Hutto*, 508 F.2d 890, 892 (8th Cir. 1975). We believe that this is such a case. It is highly unlikely, in our view, that the jurors would be aware that most criminal appeals are taken by the defense or that they would deduce, from that fact, that the trial court's reference to an appeal was somehow a comment upon Hood's guilt. Any error which the trial court committed by responding to the jury's inquiry without prior consultation with Hood or with his counsel was harmless.

## VI.

Lastly, Hood contends that the trial court erred in the admission of certain evidence

for the Arkansas murders with which Hood had been charged. Hood replied, "Not to my knowledge." The court then interrupted the proceedings by admonishing the jury:

> THE COURT: (Interrupting) Members of the jury, evidence relating to other accusations and charges, and questions relating to that, should be considered by the jury only on the issue of the credibility of this witness. In other words, it is not evidence as to whether or not he may or may not have committed the crime with which he is charged in this lawsuit. It simply may be considered only for the purpose of judging

the credibility of the witness in his testimony that he is giving in the case.

The question asked by the counsel for the government was highly improper. We are disturbed that any attorney representing the United States would attempt to try a case by the deliberate use of such prejudicial innuendo. However, in light of the facts that Hood had already testified in detail about the Arkansas charges and the dismissal of those charges against him, and that the question by the government was immediately followed by a curative instruction by the court, we cannot say that Hood was so prejudiced by this question that a mistrial should have been declared.

and that the evidence which was admitted was insufficient to sustain the verdict.

 The trial court has broad discretion in determining the relevance and the admissibility of evidence. *United States v. Williams,* 545 F.2d 47, 50 (8th Cir. 1976). Our reading of the record convinces us that any error which the trial court may have committed in the making of the various evidentiary rulings was harmless.

We have also carefully reviewed the record and find the evidence clearly sufficient to sustain the verdict. There was ample evidence from which the jury could find that the jewelry, which Hood admittedly transported from North Dakota to New York, was the same jewelry which had previously been stolen, and that Hood was aware that it had been stolen at the time that he transported it across state lines.

The judgment is affirmed.